## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Ningbo S-Chande Import & Export
Co., Ltd.,

                          Case No. 20-10190

        Plaintiff/
        Counter-Defendant,    Judith E. Levy
                         United States District Judge

v.

                          Mag. Judge Anthony P. Patti

Allied Technology, Inc.,

        Defendant/
        Counter-Plaintiff.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [37] AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [38]

Before the Court are Plaintiff/Counter-Defendant Ningbo S-Chande Import & Export Co., Ltd.'s ("Chande") motion for summary judgment on Defendant/Counter-Plaintiff Allied Technology Inc.'s ("Allied") counterclaim (ECF No. 37) and Allied's motion for partial summary judgment on Chande's claims. (ECF No. 38.) For the reasons set forth below and on the record at the June 20, 2023 hearing, both motions are granted in part and denied in part.

## I.     Background

### A.     Factual Background

Chande is a Chinese corporation based in Ningbo, People's Republic of China. It was incorporated in March 2017 by Weijun (David) Wu. Chande acts as an "importer and exporter of production materials, auto parts, industrial parts, mechanical and electrical equipment, and other business goods and technology to its customers." (ECF No. 12, PageID.87.)

Allied is a Michigan corporation based in Romulus, Michigan. It was founded in 1996 by Robert Liao and is a supplier of custom parts to automotive manufacturers. Often the parts Allied sources are incorporated into larger parts by other suppliers who provide the assembled parts to manufacturers. Prior to his death in 2017, Liao owned and operated Allied with his wife, Ruey Min (Annie) Shen. Shen now serves as Allied's president.

While the parties dispute the precise origins of Wu and Liao's business relationship, they agree that in 2015 Allied began doing business with Wu through Zhejiang Haohong Import & Export Co. (*See* ECF No. 23, PageID.299–300.) Wu and Allied subsequently entered into

a written "Letter of Consent," which Wu signed on April 8, 2016. (ECF No. 12-2, PageID.98.) Wu continued to supply parts to Allied via Zhejiang Haohong pursuant to the Letter of Consent. (*See* ECF No. 23, PageID.300–301.) Following its incorporation in March 2017, Chande began receiving and fulfilling purchase orders from Allied pursuant to the Letter of Consent. (*See id.*; ECF No. 20, PageID.262.) The parties agree that the contract governing the relationship between Allied and Chande consists of the Letter of Consent, Allied's purchase orders, and Chande's invoices, bills of lading, and prints for quotation. (*See* ECF No. 23, PageID.300–301; ECF No. 40, PageID.593.) The Court refers to the Letter of Consent and other documents that make up this contract collectively as the "Agreement."

Under the Agreement, Allied was required to provide Chande with the relevant "drawings and specifications," and Chande was required to provide Allied with parts that met the requirements contained in these "drawings and specifications." (ECF No. 38-2, PageID.450.) Allied's final customers were entitled to review and confirm the quality of the parts sourced from Chande, and Chande was required to "bear all costs incurred by [a] quality issue." (*Id.*) The Agreement provided that

"[Chande] shall confirm and reply to [Allied] within 24 hours following the receipt of [an] order" and gave Chande a standard 45–60 days to fulfil orders. (*Id.* at PageID.451.) Once orders were fulfilled, the Agreement provides that Allied would pay invoices issued by Chande "on the 25th day of the month where the invoice date issued by [Chande] expires for 60 days." (*Id.*) Finally, the Agreement addresses termination of the parties' relationship and provides that "any molds, jigs, fixtures, and any tools to be paid by [Allied] shall remain the property of [Allied]." (*Id.* at PageID.451–452.)

As relevant here, Allied directed the production of certain parts for three of its customers to Wu which were fulfilled through Zhejiang Haohong and then Chande. (*See* ECF No. 23, PageID.300–301.) In May 2016, Allied began sourcing parts for its customer SE-GI from Wu and Zhejiang Haohong. Beginning in June 2016, Allied began sourcing parts for Skilled Manufacturing, Inc. ("SMI") through Wu and Zhejiang Haohong. And in October 2016, Allied began sourcing parts for its customer Stanley (the predecessor of Dormakaba USA, Inc. which later purchased Stanley) from Wu and Zhejiang Haohong. After Chande was

4

formed in 2017, Allied began sending its purchase orders for SMI, SE-GI, and Dormakaba to Chande.

During the course of the parties' relationship, Chande developed various molds and tooling to facilitate the production of the relevant parts for Allied. (*See* ECF No. ECF No. 38-3, PageID.467–468; ECF No. 40, PageID.595.) In December 2018, Chande also paid for certain Dormakaba molds and tooling to be transferred from Allied's previous supplier in Taiwan so that Chande could begin producing certain Dormakaba parts. (*See* ECF No. ECF No. 38-3, PageID.468; ECF No. 44-25, PageID.782.) Other tooling for Dormakaba parts was transferred to Chande from Allied's Chinese affiliate. (*See* ECF No. 44-2, PageID.666.) Allied continued to source parts for SMI, SE-GI, and Dormakaba from Chande until the relationship between the parties broke down in 2019.

In 2018, Wu requested that Allied loan money to Chande so that it could pay its suppliers and continue fulfilling orders. Allied agreed to make an initial loan of $150,000 to Chande in July 2018, and an additional loan of $250,000 to Chande in January 2019. (*See* ECF No. 38-10, PageID.580; ECF No. 38-7, PageID.564–567.) The first loan was memorialized in a written "IOU," but the second loan was made by oral

agreement between the parties. (*See* ECF No. 38-10, PageID.580; ECF No. 38-3, PageID.468.)

The relationship between the parties began to break down in late 2018, though they appear to dispute who first breached their obligations under the Agreement. Chande claims that Allied began making untimely and partial payments and that by April 2019, the outstanding balance owed to Chande became so great that Chande was forced to suspend new orders from Allied. Allied alleges that Chande repeatedly delivered defective parts for SMI, SE-GI, and Dormakaba and that it was entitled to deduct the associated costs from Chande's invoices. Allied also asserts that Chande failed to ship the promised quantity of parts, delayed or cancelled scheduled shipments, met with SMI directly in Shanghai in violation of the non-competition clause of the Agreement, and then began refusing to accept new orders from Allied on April 22, 2019. Following the breakdown in the parties' relationship, Allied requested that Chande return various tooling for the manufacturing of SMI, SE-GI, and Dormakaba parts. Chande refused to return the tooling until Allied paid certain related costs. Allied contends that because of Chande's refusal to supply additional parts and timely return tooling, it was forced to locate

new suppliers for the SMI, SE-GI, and Dormakaba parts. The associated delays led to SMI and SE-GI terminating their ongoing relationships with Allied in favor of new suppliers.

## B. Procedural Background

On January 24, 2020, Chande filed its original complaint in this action against Allied. (ECF No. 1.) On February 18, 2020, Allied filed a motion to dismiss the original complaint. (ECF No. 8.) On March 10, 2020, Chande filed an amended complaint, which included claims for breach of contract, unjust enrichment, and account stated.[1] (ECF No. 12.) Allied filed a renewed motion to dismiss Chande's account stated claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) On February 25, 2021, the Court granted Allied's motion. (ECF No. 18.)

On March 11, 2021, Allied filed an answer to the amended complaint and counterclaim against Chande. (ECF No. 20.) Allied's counterclaim included three counts for breach of contract and alleged that Chande was liable for damages related to Allied's business with its

---

[1] The original complaint included a claim for breach of a non-disclosure agreement. (ECF No. 1, PageID.11–12.) However, Chande did not include that claim in the amended complaint. (*See* ECF No. 12.)

customers SMI, SE-GI, and Dormakaba, respectively. (*Id.* at PageID.285–287.)

Following discovery, the parties filed motions for summary judgment on January 31, 2023. (ECF Nos. 37, 38.) Chande's motion seeks summary judgment on all three counts of Allied's counterclaim. (ECF No. 37) Allied's motion seeks partial summary judgment on certain categories of damages. (ECF No. 38.) The parties filed response briefs on February 21, 2023 (ECF Nos. 43, 44), and reply briefs on March 7, 2023. (ECF Nos. 46, 47.)

On June 20, 2023, the Court held a hearing and heard oral argument on the parties' motions. (*See* ECF No. 49.) At the hearing, the Court raised the issue of whether certain agreements between the parties would be subject to the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, 1489 U.N.T.S. 3 (hereinafter the "CISG"). (*See* ECF No. 49, PageID.1191.) The Court also questioned whether the parties had waived application of the CISG. (*See id.* at PageID.1193.)

On June 22, 2023, the Court entered a text-only order requiring supplemental briefing on the application of the CISG. On July 14, 2023,

Chande filed its opening brief. (ECF No. 50.) Allied filed a response on August 7, 2023 (ECF No. 51), and Chande filed a reply on August 14, 2023. (ECF No. 52.)

## II.    Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis

### A.    Application of the CISG

The Court first turns to whether to apply the CISG or Michigan law. After considering the parties' supplemental briefing and the record

as a whole, the Court concludes that the parties have waived the application of the CISG to their current disputes.

"The CISG governs contracts for the sale of goods if the parties to the contract are located in different nations and both nations have signed the CISG." *Bus. Mobility Sys., Inc. v. Fibernetics Corp.*, No. 1:13-CV-1224, 2014 WL 12672687, at *10 (W.D. Mich. Apr. 14, 2014); *see also* CISG, art. 1(1)(a). "[P]arties may by contract choose to be bound by a source of law other than the CISG, such as the [UCC]. If . . . the agreement is silent as to choice of law, the [CISG] applies if both parties are located in signatory nations." *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1028 (2d Cir. 1995); *see also* CISG, art. 6. "Where parties seek to apply a signatory's domestic law in lieu of the CISG, they must affirmatively opt-out of the CISG." *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 337 (5th Cir. 2003).

A party may waive choice-of-law arguments by failing to raise the issue in its briefing. *See Pivnick v. White*, 552 F.3d 479, 484 (6th Cir. 2009); *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995); *see also Womack v. Wal-Mart Stores, Inc.*, 677 F. App'x 296, 297 (6th Cir. 2017) (applying Michigan law where the plaintiff "cited only Michigan cases in

response to [the defendant's] motion for summary judgment); *Babcock Power, Inc. v. Kapsalis*, No. 3:13-CV-717-CRS, 2017 WL 1206012 (W.D. Ky. Mar. 30, 2017) (finding the choice of law issue "abandoned" where the parties failed to raise the issue in their briefing). While it does not appear that any court in this Circuit has addressed whether application of the CISG may be waived, several decisions in the Second Circuit suggest that it is subject to waiver. *See Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari S.p.A.*, 638 F. App'x 87, 89–90 (2d Cir. 2016) (affirming district court's finding that the plaintiff consented to New York law by failing to raise the issue prior to its brief opposing summary judgment); *Eldesouky v. Aziz*, No. 11-CV-6986 JLC, 2015 WL 1573319, at *2 (S.D.N.Y. Apr. 8, 2015) (finding that "by waiting until this late juncture to raise the applicability of the CISG, Plaintiffs have waived it").

Here, the parties do not dispute that the CISG applies to the Agreement and that the Agreement does not affirmatively disclaim application of the CISG. However, the Court concludes that the parties waived application of the CISG by failing to substantively raise the issue in their initial summary judgment briefing and instead relying exclusively on Michigan law. (*See generally* ECF Nos. 37, 38, 43, 44, 46,

47.) The only mention of the CISG in this briefing appears in a footnote in Allied's response to Chande's motion for summary judgment. (ECF No. 44, PageID.650 n.1.) However, Allied only raises the CISG with respect to an alleged oral agreement regarding the cost of Dormakaba tooling and does not suggest in its initial response that the CISG might apply to the Agreement. (*See id.*) Moreover, Chande's initial reply brief does not address this argument or assert that the CISG applies to the dispute as a whole. (*See* ECF No. 46.) Accordingly, the Court concludes that the parties have waived application of the CISG and will instead rely on its analysis from the June 20, 2023 hearing under Michigan law.

## B.   Allied's Motion for Summary Judgment

Because the parties did not address the CISG in their initial briefing, the Court conducted the June 20, 2023 and analyzed the motions based on Michigan law. For the reasons set forth at the hearing, Allied's motion is granted in part and denied in part.

As an initial matter, counsel for Chande conceded that Chande waived any claim for damages based on (i) interest it paid on the loans from Allied, (ii) the costs of transferring tooling from Allied's previous supplier, and (iii) lost profits on unshipped goods because they were not

included in Chande's amended complaint. (ECF No. 49, PageID.1196–1200.) Additionally, counsel for Chande acknowledged that Chande had previously admitted that six of its outstanding invoices to Allied had already been paid in full. (*Id.* at PageID.1222.) With respect to Chande's claim for costs incurred for quality issues, the Court considered the arguments from the parties and concluded summary judgment to Allied was appropriate. (*See id.* at PageID.1219–1221.) The Court also addressed the two invoices to Allied that Chande previously assigned to Chande's manufacturer, Beilun Dapeng, and determined that summary judgment to Allied was warranted on that issue. (*See id.* at PageID.1222–1230.) Turning to the $310,000 in outstanding loan balances which Allied deducted in its final payment statement to Chande, the Court found that Chande failed to raise a genuine dispute of material fact and that it should grant summary judgment to Allied. (*See id.* at PageID.1230–1238.) Finally, the Court rejected Allied's accord and satisfaction defense based on its wire transfers to Chande. (*See id.* at PageID.1238–1242.) Accordingly, the Court concluded, for the reasons set forth on the record, that, under Michigan law, Allied's motion for summary judgment should be granted in part and denied in part. (*See id.* at PageID.1242–1244.)

## C.   Chande's Motion for Summary Judgment

The Court also addressed Chande's motion for summary judgment on Allied's counterclaim in detail at the June 20, 2023 hearing. For the reasons set forth on the record and set forth below, Chande's motion is granted in part and denied in part.

With respect to Allied's breach of contract claim related to SMI, the Court determined that there were genuine issues of material fact and that summary judgment on this claim was not appropriate. (*See id.* at PageID.1245–1267.) However, the Court found that Allied failed to raise a genuine dispute of material fact on its breach of contract claim related to SE-GI and that Chande would be granted summary judgment on this claim. (*See id.*at PageID.1267–1272.) The Court also heard argument on Allied's breach of contract claim related to Dormakaba but declined to decide the issue without further briefing from the parties as to the applicability of the CISG. (*See id.* at PageID.1272–1280.) However, because the Court concludes that the parties waived the application of the CISG, the Court analyzes this remaining claim under Michigan law.

In Count III of its counterclaim, Allied seeks to recover damages related to its relationship with Dormakaba. (*See* ECF No. 20,

14

PageID.287.) Allied contends that this claim stems from numerous breaches of the Agreement by Chande, including Chande's refusal to accept additional Dormakaba orders from Allied and failure to timely ship Dormakaba parts to Allied. (*Id*.; ECF No. 44-2, PageID.663–666; *see also* ECF Nos. 44-4, 44-5, 44-10.) As a result of these breaches by Chande, Allied asserts that it was forced to find a new supplier for Dormakaba parts. (*See* ECF No. 44-2, PageID.663–666; *see also* ECF No. 44-24, PageID.778.)

Chande subsequently refused to provide any of the associated molds or tooling used to manufacture these Dormakaba parts to Allied (*see* ECF No. 44-2, PageID.666; *see also* ECF No. 38-3, PageID.468), which Allied asserts constituted a further breach of the Agreement. (*See* ECF No. 20, PageID.287.) In order to keep fulfilling its orders for Dormakaba, Allied obtained new tooling for these parts from its new supplier, Michelin. (ECF No. 44-24, PageID.777–779.) In response to interrogatories from Chande, Allied indicated that it seeks to recover damages for

> [t]he cost of replacing the tooling for Allied's projects with Dormakaba, caused by Chande's refusal to return tooling, totaling $71,200.00. The tooling is for the following part numbers:  02350-53-STL,  01657-54-STL,  01098-55-STL,

> 01717-56-SST, 01990-56-STL, 01989-56-SST, 00831-56-STL,
> 00220-93-STL, 00354-51-STL, 00356-51-STL, 00368-51-STL,
> 00371-51-STL, 00380-91-SST, 00395-53-STL, 00405-53-STL,
> 01958-49-STL, 01959-49-STL, 02350-53-STL, 00388-53-STL,
> 00840-52-STL, 01072-55-STL.

(ECF No. 37-3, PageID.382.) Among the tooling for these twenty-one

Dormakaba parts, the tooling for eleven parts was transferred to Chande

from Allied's prior suppliers:

> The tools for Dormakaba part numbers 02350-53, 00395-53,
> 00405-53, 01959-49, and 00354-51 were transferred from
> Allied's previous supplier, Ju Xing Lian Precision Industrial
> Co., Ltd. in Taiwan, to Chande in December 2018. And
> additional tools for Dormakaba part numbers 02350-53,
> 00395-53, 00405-53, 01959, and 00354, as well as the tools for
> part numbers 00356, 01958, 00371, 00368, 01657-54, and
> 00380-91, were transferred from Allied's affiliate in China,
> Tianjin Gaocheng.

(ECF No. 44, PageID.647–648; *see also* ECF No. 44-2, PageID.666; ECF

No. 44-25, PageID.781.) The remaining Dormakaba tooling appears to

have been developed by Chande. (*Cf.* ECF No. 38-3, PageID.468; ECF No.

44-2, PageID.666; ECF No. 44-26, PageID.799.)

In its motion, Chande asserts that summary judgment on this claim

is appropriate because "Allied never had an enforceable agreement with

Chande regarding the Dormakaba tooling" and "Allied admits that it

never paid Chande for the tooling." (ECF No. 37, PageID.367.) As an

initial matter, the Agreement addresses this issue in § 9(2) of the Letter of Consent:

> In case of cooperation termination for any reason whatsoever, any molds, jigs, fixtures, and any tools *to be paid by Party A* shall remain the property of Party A. Party A may at any time request Party B to return such molds, jigs, fixtures and tools and Party B shall not refuse for any reason whatsoever.

(ECF No. 38-2, PageID.452 (emphasis added).) With respect to the Dormakaba tooling sent to Chande from other Allied suppliers, Shen explained that "Chande did not pay for any of this tooling and does not own it. Allied owns this tooling." (ECF No. 44-2, PageID.66.) Chande fails to point to any evidence or agreement between the parties that entitled it to retain this existing tooling after termination of the parties' relationship.[2] As such, the undisputed evidence demonstrates that Allied was entitled to the return of the tooling it transferred to Chande from its other suppliers.

With respect to the remaining tooling developed by Chande, Chande focuses on an apparent oral agreement regarding the allocation

---

[2] In fact, Wu admitted that he was only refusing to return this tooling to Allied because Allied had not paid the costs associated with transferring the tools from Allied's former supplier in Taiwan and had not made any orders for the associated parts. (ECF No. 38-3, PageID.468.)

of costs for developing tooling between Liao and Wu. (*See* ECF No. 37, PageID.358–359, 366–367.) Wu testified regarding the existence of the oral agreement and indicated that he told Liao: "[F]or this type of long-term strategic collaborations, it's okay for me to pay for the tooling development up front. As long as he would ensure the volume of the orders, I could eventually pay off the cost of the tooling development from the part it made." (ECF No. 44-26, PageID.797–799; *see also* ECF No. 38-3, PageID.468.) Shen similarly testified that "Chande agreed to make such parts manufactured by pressing. And then they understood that they would not expect any tooling fee as long as we kept placing orders.[3] (ECF No. 44-24, PageID.779–780.) Chande asserts that this oral agreement for tooling is not enforceable because it is based on hearsay and violates the statute of frauds.[4] (ECF No. 37, PageID.366–367.)

---

[3] Shen conceded in her deposition that she was not a party to the conversation between Wu and Liao in which they orally agreed that Chande would not to be reimbursed with respect to the tooling it developed. (ECF No. 44-24, PageID.780.)

[4] In its motion, Chande points to the statute of frauds under Article 2 of Michigan's UCC. (ECF No. 37, PageID.366 (citing Mich. Comp. Laws § 440.2201(1)).) Allied correctly points out that Article 2 of the UCC would not apply to this oral agreement because the agreement was not for the sale of goods. (*See* ECF No. 44. PageID.649.) *See also* Mich. Comp. Laws § 440.2106(1) ("A 'sale' consists in the passing of title from the seller to the buyer for a price.") However, the Court notes that for contracts not subject to the UCC, Michigan law provides that "[a]n agreement

The Court need not resolve whether this oral agreement constitutes an enforceable contract. As Allied explains in its response (*see* ECF No. 44, PageID,645–646), the damages Allied seeks from Count III flow directly from Chande's breaches of the parties' written Agreement—not the oral agreement regarding the allocation of tooling costs. Even if Chande is entitled to recover or offset the tooling costs it incurred for the ten remaining Dormakaba parts under the oral agreement, Allied was forced to incur additional costs to obtain new tooling for those parts. Those costs are a direct result of Chande's failure to perform under the parties' Agreement. As such, Chande has failed to demonstrate that it is entitled to summary judgment on Allied's breach of contract claim related to Dormakaba.

Accordingly, Chande's motion is granted in part and denied in part.

## IV.   Conclusion

For the reasons set forth above and on the record at the June 20, 2023 hearing, the parties' motions are GRANTED IN PART AND DENIED IN PART.

---

that, by its terms, is not to be performed within 1 year from the making of the agreement" must be "in writing and signed with an authorized signature by the party to be charged." Mich. Comp. Laws § 566.132.

Chande's motion for summary judgment (ECF No. 37) is GRANTED as to Allied's claim for breach of contract related to SE-GI (Count II). Chande's motion is DENIED as to Allied's claim for breach of contract related to SMI (Count I) and Allied's claim for breach of contract related to Dormakaba (Count III).

Allied's motion for partial summary judgment (ECF No. 38) is GRANTED with respect to:

(i)    the costs related to quality issues;

(ii)   the six invoices Allied previously paid in full;

(iii)  the $310,000 in deductions based on Chande's unpaid loan balances;

(iv)   the two invoices Chande assigned to a manufacturer;

(v)    the interest Chande paid on the loans from Allied;

(vi)   the costs Chande paid to transfer tooling from Allied's previous supplier; and

(vii)  Chande's claim for lost profits on unshipped goods.

Allied's motion is DENIED with respect to its affirmative defense of accord and satisfaction.

IT IS SO ORDERED.

Dated: September 30, 2023                    s/Judith E. Levy
Ann Arbor, Michigan                          JUDITH E. LEVY
                                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2023.

                                             s/William Barkholz
                                             WILLIAM BARKHOLZ
                                             Case Manager